UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:

RACHEL RENA MADDUX, et al.,                   Consolidated Contested Matters
                                              Case Nos. 15-33574, 15-33590,
        Debtors.                              15-34358, 15-34453, 15-35437,
                                              15-36032

v.

MIDLAND CREDIT MANAGEMENT, INC.,
As Agent for MIDLAND FUNDING, LLC,

        Creditor.

## MEMORANDUM OPINION

These Consolidated Contested Matters concern related Objections to proofs of claim in the bankruptcy cases of Rachel Maddux ("Maddux"), Jeffery Light ("Light"), Patricia A. Jones ("Jones"), Calvin A. Johnson ("Johnson"), Dianne Renee Peterson ("Peterson"), and Rae Blaha ("Blaha") (each, a "Debtor," and collectively, the "Debtors"). Each Debtor filed a separate voluntary petition under chapter 13 of the bankruptcy code.[1] Midland Credit Management, Inc., as Agent for Midland Funding, LLC ("Midland") filed a total of 16 proofs of claim in these Bankruptcy Cases.[2] The Debtors, by counsel, separately objected to all of the Midland Claims

---

[1] The Bankruptcy Cases are: Maddux, case number 15-33574, filed on July 16, 2015; Light, case number 15-33590, filed on July 17, 2016; Jones, case number 15-36032, filed on November 20, 2015; Johnson, case number 15-35437, filed on October 22, 2015; Peterson, case number 15-34358, filed on August 20, 2015; and Blaha, case number 15-34453, filed on August 26, 2015 (the "Bankruptcy Case(s)").

[2] Midland filed claims 13-1, 14-1, and 18-1 in the Maddux Bankruptcy Case; claims 8-1 and 9-1 in the Light Bankruptcy Case; claims 7-1, 8-1, 9-1, 10-1, and 11-1 in the Jones Bankruptcy Case; claims 6-1, 7-1 and 8-1 in the Johnson Bankruptcy Case; claims 7-1 and 8-1 in the Blaha Bankruptcy Case; and claim 10-1 in the Peterson Bankruptcy Case (the "Midland Claims").

1

(the "Objections").[3] On July 14, 2016, the Court entered an order that consolidated these contested matters as each involved nearly identical facts and common issues of law (the "Consolidated Contested Matters").[4] On October 13, 2016, the Court conducted a trial on the Consolidated Contested Matters (the "Trial"). At the end of Trial, the Court took the matters under advisement so that the parties could file post-trial briefs. Having now fully considered the pleadings, the legal memoranda, the supporting affidavits, the evidence presented at Trial, and the arguments of counsel, the Court finds that while the Midland Claims failed to comply with requirements of Federal Rule of Bankruptcy Procedure 3001(c)(2)(A) (the "Bankruptcy Rule(s)"), the Midland Claims should not be disallowed. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in support of its decision in accordance with Bankruptcy Rule 7052.[5]

**Jurisdiction and Venue**

The Court has subject matter jurisdiction over the Consolidated Contested Matters pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

---

[3] A proceeding involving a claim objection is treated as a contested matter and Fed. R. Bankr. P. 9014 applies. *See In re Fleming,* No. 08-30200-KRH, 2008 WL 4736269, at *1 (Bankr. E.D. Va. Oct. 15, 2008); *In re Paschall,* No. 07-32048, 2011 WL 5553483, at *1 (Bankr. E.D. Va. Nov 15, 2011).

[4] *See* Pre-Trial Order, *Maddux, et al. v. Midland Credit Mgmt. Inc., as Agent for Midland Funding, LLC,* No. 15-33574-KRH (Bankr. E.D. Va. July 14, 2016), ECF No. 55.

[5] Certain rules under part VII of the Bankruptcy Rules are applicable to contested matters, including Bankruptcy Rule 7052. *See* Fed. R. Bankr. P. 9014(c). Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

**Procedural and Factual Background**

The factual background and procedural history of these Bankruptcy Cases are nearly identical. With the exception of the Peterson Bankruptcy Case, all of the Midland Claims involve revolving consumer credit accounts purchased from Synchrony Bank.[6] Midland is engaged in the business of acquiring unpaid consumer debt from credit card companies and banks. Synchrony Bank sold a pool of charged-off accounts, which included certain of the Debtors' credit card debt, to Midland under the terms of a Purchase and Sale Agreement and bills of sale (the "Sale"). In each instance, the Sale occurred after the respective Debtor had filed his or her Bankruptcy Case. As part of the Sale transaction, electronic records and other records were transferred on the Debtors' accounts to Midland.[7] All of the Debtors have confirmed chapter 13 plans, which propose distributions to unsecured creditors ranging from 3% to 100%. Midland, as assignee of the Synchrony Bank consumer credit card debt, filed proofs of claim in the Bankruptcy Cases for the outstanding balance (the "Original Midland Claims").[8]

The Original Midland Claims disclosed that the amounts claimed due did not include any interest, fees, expenses, or other charges in addition to the principal balance. Midland did not check the box on Official Form 10 that would indicate the claims included interest or other charges. The itemized statement attached to the Original Midland Claims, indicated that there was $0.00 "Interest Due," $0.00 "Fees," and $0.00 "Costs." The Debtors' Objections to the

---

[6] The debt that Midland purchased in the Peterson Bankruptcy Case was a closed-end account, commonly referred to as an installment loan.

[7] The records included account statements for each of the credit card accounts (the "Account Statement(s)"). After receiving the electronic records from Synchrony Bank, Midland generated seller data sheets for each of the accounts it had purchased (the "Seller Data Sheet(s)").

[8] In order to participate in any distribution proposed under a chapter 13 plan, a creditor must file a proof of claim for the creditor's claim to be allowed and paid. *See* Fed R. Bankr. P. 3002(a), 3021. Bankruptcy Rule 3001 governs the manner of filing proofs of claim, which must conform substantially to the appropriate Official Form. *See* Fed R. Bankr. P. 3001; *see also* Fed R. Bankr. P. 9009 (stating that "the Official Forms prescribed by the Judicial Conference of the United States shall be observed.").

3

Original Midland Claims alleged that (i) no amount was owed to Midland, (ii) the writing on which the Midland Claim was based was not attached, and (iii) interest and fees had not been properly disclosed.

Instead of filing a written response to the Debtors' Objections as required by Local Bankruptcy Rule 9013-1(H)(3)(d), Midland timely filed amended versions of the Original Midland Claims (the "First Amended Claims").[9] The First Amended Claims asserted once again that the amounts claimed due included no interest, fees, or other costs.[10] Unlike the Original Midland Claims, the First Amended Claims attached support documentation, which included a copy of the applicable bill of sale, an affidavit of sale, purchase price reconciliation/funding instructions related to the purchase of the Midland Claims, copies of the applicable Account Statements reflecting the last payment made and charge-off of the applicable account, and a copy of the Seller Data Sheet. On April 11, 2016, the Debtors filed objections to the First Amended Claims wherein the Debtors renewed their original Objections.

On August 11, 2016, the Debtors jointly filed a motion for summary judgment[11] together with Debtors' Memorandum in Support of Motion for Summary Judgment[12] (collectively, the "Debtors' Motion for Summary Judgment"). The Debtors sought summary judgment on the

---

[9] Debtors complain that the amended Midland Claims were filed without leave of Court. However, Bankruptcy Rule 9014(c) does not make Bankruptcy Rule 7015 applicable to contested matters unless otherwise directed by the Court. *See* Fed. R. Bankr. P. 9014(c).

[10] The Official Form used for filing a proof of claim had been updated since the Original Midland Claims were filed. New Official Form 410 which replaced the old Official Form 10, now requires claimants to check alternative boxes in response to question 7 indicating affirmatively whether or not the claim includes interest or other charges. The First Amended Claims were properly filed using new Official Form 410. The box indicating that the amount claimed due did not include interest or other costs was checked.

[11] *See* Debtors' Motion for Summary Judgment, *Rachel Rena Maddux, et al. v. Midland Credit Mgmt. Inc., as Agent for Midland Funding, LLC,* No. 15-33574-KRH (Bankr. E.D. Va. Aug. 11, 2016), ECF No. 67.

[12] *See* Debtors' Memorandum in Support of Motion for Summary Judgment, *Rachel Rena Maddux, et al. v. Midland Credit Mgmt. Inc., as Agent for Midland Funding, LLC,* No. 15-33574-KRH (Bankr. E.D. Va. Aug. 11, 2016), ECF No. 69.

4

following two issues: (1) that the First Amended Proofs of Claim failed to properly itemize interest, fees, and other costs as required by Bankruptcy Rule 3001(c)(2)(A); and (2) that Midland's violation of Bankruptcy Rule 3001 was "willful" and sanctions were warranted.[13] The Court conducted a hearing on the Debtors' Motion for Summary Judgment on September 13, 2016 (the "Summary Judgment Hearing").

The Debtors argued that both the Original Midland Claims and the First Amended Claims failed to comply with Bankruptcy Rule 3001(c)(2)(A), as they improperly asserted that no interest or other fees were included in the Midland Claims. Bankruptcy Rule 3001(c)(2)(A) provides that in a bankruptcy case in which the debtor is an individual "[i]f, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim." Fed. R. Bankr. P. Rule 3001(c)(2)(A). Official Form 410, to which a proof of claim must substantially conform, requires the claimant to check one of two alternate boxes, either "yes" or "no," to disclose whether the amount claimed due includes interest or other charges.[14] Both the Original Midland Claims and the First Amended Claims disclosed a $0.00 amount in "Interest Due," "Fees," and "Costs" on the attached itemization account summary. Instead, Midland asserted that the entire amount claimed due was comprised of principal only. The Debtors argued, on the other hand, that the supporting documentation attached to the First Amended Claims clearly showed that the Midland Claims included an interest component. The Debtors asserted that both the charge-off statements and the last payment Account Statements that Midland had received from Synchrony Bank and attached to

---

[13] The Debtors' Motion for Summary Judgment only addressed the 15 revolving consumer credit accounts that Midland purchased from Synchrony Bank and did not involve the Midland Claim filed in the Peterson Bankruptcy Case.

[14] *See supra* note 8.

5

the First Amended Claims identified embedded interest and fees in the total amount claimed due. Furthermore, the Seller Data Sheet disclosed the full amount of accrued interest on the Debtors' accounts. The Debtors concluded that Midland's own internal data belied its representation that the Midland Claims included no interest; and, accordingly, Midland violated Bankruptcy Rule 3001(c)(2)(A) when it failed to disclose that fact.

In response, Midland argued that it was not obligated to check the box stating that interest, fees, expenses, or other charges were included in its claim, as any such interest or other charges had been capitalized as new principal. Midland relied on *In re Osborne*, No. 03-25176, 2005 WL 6425053, (Bankr. D. Kan. Apr. 25, 2005) for the proposition that holders of revolving credit obligations are not required to provide an itemized statement of interest, fees, expenses, or other charges. Midland concluded that in light of *In re Osborne*, it was not required to provide an itemized statement of interest, fees, expenses, or other charges because any interest, fees, expenses, or other charges had been capitalized into the principal.

*In re Osborne,* the case upon which Midland relies, was overruled in 2011 with the adoption of Rule 3001(c)(2). Although the Advisory Committee on Bankruptcy Rules (the "Advisory Committee") specifically noted opposition from commentators on behalf of the credit card industry to the proposed amendment to Rule 3001 adding paragraph (c)(2) that required creditors to submit an itemization of interest and other charges, the amendment to the Bankruptcy Rule was adopted without any change from its proposed form and became effective December 1, 2011.[15]

---

[15] The opposition asserted, as Midland does here, that "it is often impossible to break out the components of credit card debt because, depending upon the terms of the applicable credit agreement, unpaid interest and fees may be folded into the principal balance." *Report of the Advisory Comm. On Bankr. R. to Standing Committee on R. of Practice and P.*, at 7-8 (May 27, 2010).

6

The Bankruptcy Rules govern the conduct of cases under Title 11 of the United States Code. The Rules Enabling Act of 1934, 28 U.S.C. §§ 2071-2077, authorizes the United States Supreme Court to promulgate general rules of practice and procedure. *See* 28 U.S.C. § 2072, 2075.[16] As a legislative enactment, the Bankruptcy Rules are interpreted under the traditional tools of statutory construction. *See Beech Aircraft Corp. v Rainey,* 488 U.S. 153, 163 (1988) (interpreting the Federal Rules of Evidence).

The plain language of Bankruptcy Rule 3001(c)(2)(A) requires an itemized statement of interest and other charges to be filed with the proof of claim if a claim includes interest, fees, expenses, or other charges in any case in which the debtor is an individual. *See* Fed. R. Bankr. P. 3001(c)(2)(A). Bankruptcy Rule 3001(c)(2)(A) does not contain an exception for any interest, fees, expenses, or other charges that may have been capitalized by the holder of a claim. Whereas Bankruptcy Rule 3001(c)(1) includes an explicit exception for a claim based upon an Open End or Revolving Consumer Credit Agreement, Bankruptcy Rule 3001(c)(2) makes no such exception for credit card debt. Midland's contention that it could not comply with the dictates of Bankruptcy Rule 3001(c)(2) because it lacked access to information pertaining to the amount of interest embedded in the Midland Claims is disingenuous. Even assuming it was without the information, the assertion that the Midland Claims included no interest was simply

---

[16] The rule-making process has been delegated to committees of the Judicial Conference of the United States (the "Judicial Conference"). *See* 28 U.S.C. § 2073. Advisory Committees of the Judicial Conference solicit comments from the bench, bar and general public after publication of a proposed rule or amendment to a rule. The Advisory Committee makes findings in response to the public comments and may elect to discard, review, or transmit the proposed rule or amendment to the Committee on Rules of Practice and Procedure of the Judicial Conference, which makes recommendations to the Judicial Conference. The Judicial Conference makes recommendations to the Supreme Court. The Supreme Court must transmit its proposed rule to Congress by May 1 of the year in which the rule is prescribed. The Rule becomes effective on December1 of the same year unless Congress provides otherwise by law. *See* 28 U.S.C. § 2075.

incorrect.[17] But in the case at bar, Midland possessed the information. The Seller Data Sheets prepared by Midland disclose the accrued interest figures. Midland simply failed to report the information either on the proof of claim forms or on the attached account summaries that it filed.

Midland's reliance on *In re Osborne* was misguided in light of the 2011 amendments made to Bankruptcy Rule 3001. Midland cannot escape the requirements of Bankruptcy Rule 3001(c)(2) simply by relabeling the interest component of the amount claimed due as capitalized interest and reporting it as principal. Whatever label Midland may choose to apply, the Midland Claims include an interest component. The Court found that there was no genuine dispute as to any of these material facts. Accordingly, at the conclusion of the Summary Judgment Hearing, the Court granted the Debtors' Motion for Summary Judgment on the issue of Midland's failure to comply with Bankruptcy Rule 3001(c)(2)(A). The Court held that the First Amended Claims violated Bankruptcy Rule 3001(c)(2)(A) because the Midland Claims contained interest that was neither disclosed nor itemized.

The Court denied the Debtors' Motion for Summary Judgment on the issue of sanctions. The Court found that material facts were in dispute with regard to whether Midland's violation of Bankruptcy Rule 3001(c)(2) was willful and with regard to whether sanctions were appropriate under the circumstances. The Court reserved the evidentiary issues pertaining to sanctions for trial.[18]

---

[17] Many of the regulations that govern the extension of open-end revolving credit, including the issuance of credit cards, are found in the regulations implementing the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, known as Regulation Z ("Reg. Z"). *See* 12 C.F.R. § 1026 *et seq*. Among the detailed disclosure requirements mandated by Reg. Z are requirements to identify finance and other charges and to disclose how those charges are calculated. *See* 12 C.F.R. § 1026.7(b)(5). Reg Z requires that credit card statements disclose the total finance charges over the billing statement period and calendar year to date period. *See* 12 C.F.R. § 1026(b)(6)(ii). At a minimum, this information attributable to finance charges was available to Midland from Synchrony Bank.

[18] *See* Order Denying Motion for Summary Judgment, *Maddux, et al. v. Midland Credit Mgmt. Inc., as Agent for Midland Funding, LLC,* No. 15-33574-KRH (Bankr. E.D. Va. Sept. 21, 2016), ECF No. 92 (the "Summary Judgment Order").

**Trial**

*a. Validity and Amount of Midland's Claims*

Section 502 of the Bankruptcy Code governs the allowance and disallowance of claims. *See* 11 U.S.C. § 502. A proof of claim filed under section 501 of the Bankruptcy Code is deemed allowed unless a party in interest files an objection. *See* 11 U.S.C. § 502. The Debtors in the cases at bar did file Objections to the allowance of the Midland Claims. Generally, a proof of claim filed in compliance with Bankruptcy Rule 3001 is entitled to an initial presumption of validity. *See In re Smith*, 419 B.R. 622, 627 (Bankr. E.D. Va. 2008); *see also* Fed. R. Bankr. P. 3001(f).[19] Since the Court had found in connection with the Motion for Summary Judgment that Midland did not comply with Bankruptcy Rule 3001(c)(2)(A) by failing to itemize interest and other charges embedded in the Midland Claims, the Court did not allow Midland to rely on the presumption of validity normally afforded to claims at trial. *See In re Varona,* 388 B.R. 705 (Bankr. E.D. Va. 2008) (holding that the proper remedy for a violation of Bankruptcy Rule 3001 is to deny the claim *prima facie* effect under 11 U.S.C. § 502(a)).

Midland called three witnesses on its behalf at trial. The testimony of Rodrigo Bedoya ("Bedoya"), Midland's Director of Bankruptcy Operations, was uncontroverted. Bedoya explained the process under which Midland acquired the Debtors' accounts from Synchrony Bank. Midland purchased pools of charged-off accounts from Synchrony Bank. The charged-off accounts were bundled by date. Synchrony Bank effected the assignment of each pool through a bill of sale. Ownership of a specific account within a pool can be verified by matching the account numbers on the account statements with the charge-off statements that Midland received from Synchrony Bank. Bedoya was able to demonstrate in this manner that each of the

---

[19] Bankruptcy Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with [Bankruptcy Rule 3001] shall constitute *prima facie* evidence of the validity and amount of the claim."

9

Debtors' accounts had been assigned from Synchrony Bank to Midland. The Court is satisfied that Midland is the owner of the Debtors' credit card accounts in these Consolidated Contested Matters.

Midland bought the closed-end installment loan in the Peterson Bankruptcy Case from OneMain Financial. Bedoya testified that OneMain Financial transferred the Peterson Disclosure Statement, Note, and Security Agreement (the "Peterson Note") to Midland in connection with a Purchase and Sale Agreement. Once again, the transfer was effected through a bill of sale along with an accompanying account statement and charge-off statement. The same last four digits of the Peterson account number appear on each of the documents. The executed bill of sale indicates that OneMain Financial assigned the Peterson closed-end account to Midland on May 21, 2015.

The Debtors argue that Midland is not a person entitled to enforce the note underlying the Peterson Claim under Virginia law because Midland is neither "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 8.3A-309 or § 8.3A-418 (d)." Va. Code Ann. § 8.3A-301. Midland introduced without objection a copy of the Peterson Note into evidence at trial. *See* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity . . . ."). The Court finds that Midland does have the right to enforce the Peterson Note. In Virginia, an "instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Va. Code Ann. § 8.3A-203(a). Bedoya's uncontested testimony established that

the Peterson Note was delivered to Midland through the bill of sale executed by OneMain Financial for the purpose of giving Midland the rights to enforce the instrument.

Bankruptcy Rule 3001(e)(1) authorizes the transferee of a claim, such as Midland in the cases at bar, to file a proof of claim. Prior to the 2012 amendments to Bankruptcy Rule 3001, a transferee had "an obligation under Rule 3001 to document its ownership of a claim" by attaching a copy of the assignment to its proof of claim. *In re Armstrong,* 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005); *In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004). The 2012 amendments to "Rule 3001(c)(3)(A) *replaced* the requirement of attaching [any writing on which the debt is based] *unless* the documents are requested from the claimant pursuant to Rule (c)(3)(B)." *In re Hill,* No. 13-50707, 2014 WL 801517, at *6 (Bankr. E.D. Ky. Feb. 28, 2014) (citing *In re Umstead*, 490 B.R. 186, 195 (Bankr. E.D. Penn. 2013) (emphasis in original).[20] The Midland Claims complied with the disclosure requirements for debt based on open-end or revolving consumer credit agreements set forth in Bankruptcy Rule 3001(c)(3)(A).[21] The Debtors offered no evidence suggesting that Midland does not own the Midland Claims. The Court concludes that Midland has standing to collect the Midland Claims and was authorized to file its proofs of claim in each of the Consolidated Contested Matters.

Brenden Magnino ("Magnino"), a process manager employed at Midland, testified about the internal computer systems used by Midland to process and store data concerning the accounts Midland purchases. All of the account information that Midland receives from the seller is loaded into a Media Portal computer program that was developed and is maintained by Midland.

---

[20] Although the Debtors objected to the ownership of the Midland Claims, they did not request that Midland provide a copy of the writing on which the claims were based until discovery in these Consolidated Contested Matters was well underway.

[21] The information required by Bankruptcy Rule 3001(c)(3)(A) is: (i) the name of the entity from whom the creditor purchased the account; (ii) the name of the entity to whom the debt was owed at the time of the account holder's last transaction; (iii) the date of the last transaction; (iv) the date of the last payment; and (v) the date that the account was charged to profit or loss.

11

Certain of the account information is uploaded into another system called I Series. Midland does not transfer all of the data it receives from the Media Portal into the I Series program. Specifically, information related to pre-charge-off interest and fees on the open-end or revolving consumer credit accounts it purchases are not loaded into the I Series system because Midland treats the entire amount it purchases as principal. The I Series program is the system Midland uses to generate prepopulated forms for purposes of filing claims in bankruptcy cases.

   Bedoya testified regarding the accuracy of the amount of each of the Midland Claims. One of the bankruptcy specialists who works under Bedoya's supervision will be tasked with filing a proof of claim in a given bankruptcy case. The bankruptcy specialist must verify the debtor's social security number, the debtor's name, and the claim amount. After the bankruptcy specialist validates the information and believes the account is eligible for filing a proof of claim, the bankruptcy specialist will generate a prepopulated proof of claim form from the Midland I Series system. After the proof of claim has been prepared, the bankruptcy specialist verifies that the proof of claim form contains the correct information. Once the bankruptcy specialist validates the information on the proof of claim form, he signs it and files it. Any issue that a bankruptcy specialist may encounter with a claim, such as inconsistent information, must be resolved before any claim is filed.

   Bedoya also testified regarding Midland's process for amending the proofs of claim that it files. The most common reason for Midland to amend a claim is when an objection is filed requesting additional documentation. Upon receipt of such an objection, the Midland bankruptcy specialist assigned to that claim will use the Media Portal program to access the additional documentation such as the bill of sale, the last payment Account Statement, the charge-off Account Statement, and the Seller Data Sheet (the "Media"). The bankruptcy specialist will

Document      Page 13 of 19

attach the Media to an amended proof of claim form and file it with the court. Bedoya further testified that he has no knowledge of any Midland employee filing a claim not in conformity with Midland's process.

Midland's final witness was Barry Isaac Strickland ("Strickland"), a certified public accountant, who was designated and duly qualified as an expert witness. Strickland demonstrated that the 11 Midland Claims filed in the Maddux Bankruptcy Case, the Light Bankruptcy Case, the Peterson Bankruptcy Case, and the Jones Bankruptcy Case were essentially identical or substantially similar to the amounts scheduled by the Debtors.[22] Of the remaining five Midland Claims, one was filed in an amount that was substantially less than the scheduled amount.[23] The documentation attached to the other four First Amended Claims adequately explained the difference between the filed and scheduled amounts.[24]

None of the Debtors appeared at the trial to dispute any of the evidence offered by Midland as to the validity or amounts of the Midland Claims. The answers given by the Debtors to Midland's discovery requests provided no substantive grounds for the objections they had raised to the validity or the amounts asserted in the Midland Claims. After considering the

---

[22] By way of example, the parties' Joint Stipulation of Undisputed Facts reveals that Maddux scheduled a Lowes' credit card debt for $1,996 (the "Scheduled Amount of the Claim"). Strickland matched the Scheduled Amount of the Claim with the amount indicated on the last payment Account Statement dated July 7, 2015 (which was attached to Midland's First Amended Claim 14-2) by rounding down by 26 cents to the nearest dollar amount. The amount set forth in Midland's First Amended Claim 14-2 was $2,077.31 (the "Claimed Amount"). Strickland was able to reconcile the Claimed Amount with the Scheduled Amount of the Claim by using the charge-off Account Statement attached to Midland's First Amended Claim 14-2. The account was charged off on July 26, 2015 (the "Charge-off Date"). Additional interest and fees had accrued between the end of the closing date reflected on the last payment Account Statement and the Charge-off Date, which accounted for the difference between the Scheduled Amount of the Claim and the Claimed Amount. The charge-off Account Statement shows that amount of principal charged-off was $1,917.23 and the amount of accrued interest that was charged-off was $160.08. The sum of these two charged-off amounts is $2,077.31, the Claimed Amount set forth in Midland's First Amended Claim 14-2.

[23] The Midland Claim filed in the Johnson Bankruptcy Case was in the amount of $4,439.40. The scheduled amount of this claim was $6,524.00.

[24] The last payment Account Statement and the charge-off Account Statement attached to the First Amended Claims provide information in each instance from which the amount of interest, fees and purchases that accumulated between the dates of the two Account Statements could be ascertained.

13

evidence presented to the Court, the Court is satisfied that Midland has proven the validity and amount of the Midland Claims in each instance. The sole dispute is whether the Midland Claims should be disallowed for failing to comply with Bankruptcy Rule 3001(c)(2)(A).

*b. Midland's Failure to Comply with Bankruptcy Rule 3001(c)(2)(A)*

Bedoya testified regarding Midland's policy on interest and accounts in bankruptcy. When Midland filed its Original Proofs of Claim in these Bankruptcy Cases, Midland believed it was not proper to check the box stating that the claim contained interest. This was because Midland did not charge any interest or fees on any of the post-bankruptcy accounts that it purchased. It was Midland's policy to treat the entire amount of a purchased claim as principal. Bedoya understood the Original Midland Claims to accurately represent the interest and fees that had accrued on the account prior to the charge-off date as capitalized into principal. Strickland corroborated this testimony explaining that it was the common practice throughout the credit card industry to capitalize accrued interest and fees as principal.

Bedoya explained that Midland immediately changed its policy in this regard in response to the entry of the Court's Summary Judgment Order. Midland immediately amended its First Amended Claims (individually, a "Second Amended Proof of Claim," and collectively, the "Second Amended Proofs of Claim") within days after the Court's decision. The Second Amended Proofs of Claim checked the box to indicate that the Midland Claims did contain pre-charge-off interest. The itemization sheet attached to each Second Amended Proof of Claim included the words "See attached" in the "Interest Due," "Fees," and "Costs" itemization boxes. The Charge-off Statement and the Seller Data Sheet attached to each of the Second Amended Proofs of Claim disclosed the amounts of interest and fees charged year to date and the amount of charged-off interest on the account.

14

*c. Sanctions for Violations of Bankrupcty Rule 3001(c)(2)(A)*

The Debtors argue that the Midland Claims in these Consolidated Contested Matters should be disallowed for violation of Bankruptcy Rule 3001(c)(2)(A). The Debtors maintain that Midland willfully filed false claims and that it continues to do so. The Debtors rely on *Commonwealth Biotechnologies, Inc. v. Fornova Pharmworld, Inc. (In re Commonwealth Biotechnologies, Inc.)*, No. 11–30381–KRH, 2012 WL 5385632 (Bankr. E.D. Va. Nov. 1, 2012) and *In re Varona*, 388 B.R. 705 (Bankr. E.D. Va. 2008) for the proposition that the Court may disallow Midland's claims for non-compliance with Bankruptcy Rule 3001 under 11 U.S.C. § 105.

The Court finds that Midland did not willfully file false claims. In fact it took immediate measures to correct the deficiency in the proofs of claim it had filed when the Court issued its Summary Judgment Order. Indeed, Midland has been forthcoming with information supporting the basis of its claims throughout the pendency of these Consolidated Contested Matters. The Court will not disallow the Midland Claims under § 105 of the Bankruptcy Code. *See In re Goeller,* No. 12-17123-RGM, 2013 WL 3064594, at *3 (Bankr. E.D. Va. June 19, 2013) ("Mere non-compliance with the informational requirements of Rule 3001 such as attachment of documentation or providing specific information should not be, in and of itself, grounds to disallow the claim").[25]

---

[25] The Court recognized that non-compliance with Bankruptcy Rule 3001 could be a basis for disallowance of a claim in *In re Commonwealth Biotechnologies, Inc..* But the Debtors' reliance on the holding in that case is misplaced given the facts presented in the cases at bar. In *In re Commonwealth Biotechnologies, Inc.,* the court found that the claimant was not entitled to enforce the note underlying the claim because no evidence had been presented that the note was ever transferred to the claimant. *See In re Commonwealth Biotechnologies, Inc.,* 2012 WL 5385632, *at 5, 6. The Court actually disallowed the claim under 11 U.S.C. § 502(b)(1) because the claimant was not entitled to enforce the note under Virginia law. *See id.* In this case, Midland has satisfied its burden on the ownership of the credit card accounts.

15

The Court will confine its consideration to the remedies specifically set forth in Bankruptcy Rule 3001(c)(2)(D). The Bankruptcy Rule provides that, if the Debtor is an individual, the Court may issue two sanctions when the holder of a claim fails to comply with Bankruptcy Rule 3001:

> If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions: (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3001(c)(2)(D); *see also Critten v. Quantm3 Group, LLC (In re Critten)*, 528 B.R. 835, 840 (Bankr. M.D. Ala. 2015) (noting that the remedy for a violation of Bankruptcy Rule 3001 is limited to the provisions in Fed. R. Bankr. P. 3001(c)(2)(D)); *In re Reynold*, 470 B.R. 138, 145 (Bankr. D. Colo. 2012).

Although it does not believe that Midland willfully filed false claims, the Court cannot find that the failure of Midland to itemize interest and fees in these Consolidated Contested Matters under Rule 3001(c)(2)(A) was "substantially justified or . . . harmless." Fed. R. Bankr. P. 3001(c)(2)(D)(i).[26] The language of Bankruptcy Rule 3001(c)(2)(A) clearly requires holders of claims, including credit card claims, to provide an itemization of interest, fees, expenses, and other charges when the debtor is an individual. *See* Fed. R. Bankr. P. 3001(c)(2)(A). The supporting documents provided by Midland for each of the Midland Claims clearly indicated that there was an interest component in the claims. Representing on the proof of claim form that the claimed amount did not include interest was misleading. Nor did appending documents and

---

[26] In addition to *In re Osborne*, Midland cites *In re Armstrong,* 320 B.R. 97 (Bankr. N.D. Tex. 2005), *In re Keemmer,* 315 B.R.706 (Bankr. E.D. Tenn. 2004), and *In re Cluff,* 313 B.R. 323 (Bankr. D. Utah 2004) in arguing that it was substantially justified in disclosing capitalized interest as principal. All those cases predate the amendments to the Bankruptcy Rule that added Bankruptcy Rule 3001(c)(2)(A).

16

stating "See attached" satisfy the obligation to itemize. Strickland testified that it took him an hour of his time to reconcile the Midland Claims with the Debtors' schedules. The itemization of fees and interest must be in a form that does not require a certified public accountant to decipher. The resolution of claims in bankruptcy is designed to be a fair and inexpensive process. These Debtors were entitled to sufficient information to evaluate the validity of the Midland Claims without undue burden or expense. *See In re DePugh,* 409 B.R. 125 (Bankr. S.D. Tex. 2009) ("This Court does not believe that the Supreme Court contemplated that creditors could ignore Bankruptcy Rule 3001's requirements unless and until a debtor complains and then cry 'no harm no foul' by producing documents that should have been produced to begin with.").

The Court finds that the Debtors have been harmed. They have had to incur legal fees on account of Midland's non-compliance with Bankruptcy Rule 3001. In most of these Consolidated Contested Matters, it was the other creditors of the Debtors and not the Debtors themselves who stood to benefit from the Debtors' policing the claims process.[27] The legal fees incurred by these Debtors may negatively impact the dividend that the other unsecured creditors in these the Bankruptcy Cases may expect to receive. The Court finds that the Debtors are entitled to be reimbursed the reasonable expenses and attorneys' fees caused by Midland's non-compliance with Bankruptcy Rule 3001(c)(2)(A). *See* Fed. R. Bankr. P. 3001(c)(2)(D)(ii) ("[A]ward other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.").

No other additional remedy is necessary. The Court, in applying the discretion that the Bankruptcy Rule accords to it, does not find that the sanction of precluding the omitted evidence

---

[27] Only those Debtors who confirmed and completed 100% plans would benefit from the disallowance of a claim.

under Bankruptcy Rule 3001(c)(2)(D)(i) is appropriate in the cases at bar. The Court is satisfied with Midland's good faith. The Original Midland Claims and the First Amended Claims did comply with Bankruptcy Rule 3001(c)(3). Midland does not add interest or fees to the claims it buys. Midland amended the First Amended Claims within two days after the entry of the Summary Judgment Order by checking the appropriate box on Official Form 410 to indicate that the Midland Claims include interest and directing parties to the attached documents for specific information about what the seller was reporting as accrued interest before charge-off. Since that time, Midland has filed other proofs of claim in this district that further attempt to comply with the Summary Judgment Order. Additional sanctions are not necessary to deter future noncompliance with Bankruptcy Rule 3001.[28]

Counsel for the Debtors must submit a fee application for the Court's consideration within fourteen days of the issuance of this memorandum opinion and schedule a hearing thereon for a date mutually agreeable to Midland's counsel of record in this case. The Court will evaluate the application, applying such factors as those set forth in 11 U.S.C. § 330(a). *See also Perdue v. Kenny A.*, 559 U.S. 542, 550-57 (2010).

**Conclusion**

Midland failed to comply with Bankruptcy Rule 3001(c)(2)(A) when it filed proofs of claim in these cases reporting that no interest was included in the balance. Accordingly, the Midland Claims were denied *prima facie* validity. Midland was able to establish its ownership of the Midland Claims and its entitlement to collect the Midland Claims in these Bankruptcy

---

[28] Midland has included a disclaimer on the itemization it is now attaching to its proofs of claim explaining that "it is itemizing the balance due based on data provided to it by Synchrony Bank." While counsel for the Debtors took issue with this disclaimer, the Court finds that it accurately explains the source of the interest figure Midland is now reporting. At Trial, Midland asked the Court for guidance as to how it could improve the process for debtors and trustees to quickly review its claims and ascertain their validity. The district may consider amending its local rules at a future date in order to accommodate this request.

Cases. Midland proved the validity and accuracy of the Midland Claims at Trial. Accordingly, the Court will overrule the Debtors' objections to the First Amended Claims. The Second Amended Proofs of Claim filed by Midland will be allowed under 11 U.S.C. § 502. The Court finds that the Debtors' recovery of the reasonable expenses and attorneys' fees they incurred that was caused by Midland's noncompliance with Bankruptcy Rule 3001(c)(2)(A) is warranted in this case under Bankruptcy Rule 3001(c)(2)(D). As Midland did comply with Bankruptcy Rule 3001(c)(3) and promptly amended the Midland Claims within two days after the entry of the Summary Judgment Order, the Court finds that no additional sanction is necessary or appropriate in these cases.

    A separate order shall issue.

ENTERED: _December 1, 2016_

                                         /s/ Kevin R. Huennekens
                            UNITED STATES BANKRUPTCY JUDGE

                            Entered on Docket:  December 1, 2016